RAY TRIMBLE, AN INDIVIDUAL, APPELLEE, V. M.E. WESCOM, ALSO KNOWN AS MICK E. WESCOM, AND SALLY WESCOM, INDIVIDUALS, APPELLEES, AND HOWARD D. VANN AND R. THOMAS VANN, INDIVIDUALS, APPELLANTS.

673 N.W.2d 864

Filed January 16, 2004.   Nos. S-01-168, S-01-469.

Aimee J. Haley and Larry A. Jobeun, of Fullenkamp, Doyle & Jobeun, for appellants.

Ann M. Grottveit, of Stalnaker, Becker, Buresh, Gleason & Farnham, P.C., for appellee Ray Trimble.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Ray Trimble brought this breach of contract action to recover a real estate commission on the sale of land in Douglas County.

## SCOPE OF REVIEW

■ Regarding questions of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Martin v. Nebraska Dept. of Corr. Servs.,* ante p. 33, 671 N.W.2d 613 (2003).

## FACTS

In early 1997, Howard D. Vann contacted Trimble, a licensed real estate broker who, at the time, was an agent for R.L. Scott Company. Howard Vann was seeking property that he and R. Thomas Vann could purchase in order to effect a "like-kind" exchange under the Internal Revenue Code, I.R.C. § 1031 (1994 & Supp. IV 1998).

Trimble contacted M.E. Wescom and Sally Wescom in April 1997 to discuss the possibility of selling certain land that they owned to the Vanns. On April 23, Trimble and M.E. Wescom entered into a listing agreement for the period of April 23 to May 20. During this period, R.L. Scott Company had the right to list and sell the Wescoms' property. Pursuant to the listing agreement, if a sale or exchange was made, or a buyer was found who was

ready, willing, and able to purchase or exchange the property, before the expiration of the listing agreement, Trimble would receive a commission on the sale. The listing agreement included a 4-month "protection period" that would begin May 21. Thus, if within 4 months after the expiration of the listing agreement, the Wescoms sold, exchanged, or optioned the property to any party due to Trimble's efforts or advertising during the listing period, Trimble was entitled to receive a commission on the sale.

In May 1997, the Wescoms and the Vanns signed a purchase agreement (May purchase agreement). The purchase price was to be $16,000 per surveyed acre, and a $25,000 earnest money deposit was required. Among the contingencies placed on the agreement in a subsequent addendum were the following: the sale was subject to the Vanns' ability to sell certain land for the purpose of effecting a like-kind exchange and the sale was to close no later than August 2. The commission was set at 6 percent of the purchase price.

In July 1997, the Vanns learned that they could not sell their land and effect a like-kind exchange before the August 2 closing deadline set forth in the May purchase agreement. Accordingly, the Vanns requested, through Trimble, an extension of the closing date. The Wescoms, communicating through Trimble, indicated that they would allow an extension only if the earnest money deposit was made nonrefundable. This was unacceptable to the Vanns, and the closing deadline was not extended. The sale of the Wescoms' land did not close by August 2.

On August 8, 1997, Howard Vann and Trimble each sent a notice to the title company requesting a return of the Vanns' earnest money deposit. Although Trimble made efforts to negotiate another purchase agreement between the parties, no agreement was signed by September 20, the last day of the 4-month protection period. According to the Wescoms and the Vanns, they never communicated directly with each other until October.

In October 1997, Howard Vann contacted the Wescoms directly, and on October 28, the parties signed a second purchase agreement. The purchase price was $15,500 per surveyed acre. This sale closed thereafter. In early 1998, through communications with the Wescoms, Trimble discovered that they had sold their property to the Vanns, and this action commenced.

The Vanns' demurrers, alleging that Trimble's petition failed to state a cause of action, were overruled. The Vanns filed motions for directed verdict at the close of Trimble's case in chief and at the close of all the evidence. These motions were also overruled. The jury found in favor of the Wescoms, but could not reach a verdict as to the Vanns. The Wescoms were subsequently dismissed from the action according to the verdict, and the jury was discharged as to the Vanns.

The Vanns filed a motion for judgment notwithstanding the jury's inability to reach a verdict pursuant to Neb. Rev. Stat. § 25-1315.02 (Cum. Supp. 2002). At the same time, Trimble filed a motion for new trial. The district court overruled the Vanns' motion for judgment notwithstanding the verdict and granted Trimble's motion for new trial, stating that it had erred in separating the Vanns and the Wescoms in the jury instructions and verdict forms. The Vanns timely appealed.

On appeal to the Nebraska Court of Appeals, the Vanns argued that the district court erred in the following respects: (1) overruling their demurrers to Trimble's amended petition, (2) overruling their motions for directed verdict at trial, and (3) failing to grant their posttrial motion for judgment notwithstanding the jury's inability to reach a verdict.

The Court of Appeals concluded that the district court did not err in overruling the Vanns' demurrers, motions for directed verdict at trial, or posttrial motion for judgment notwithstanding the jury's inability to reach a verdict. See *Trimble v. Wescom*, Nos. A-01-168, A-01-469, 2003 WL 21057309 (Neb. App. May 13, 2003) (not designated for permanent publication). The Court of Appeals also determined that the district court did not err in granting Trimble's motion for new trial. We granted further review.

## ASSIGNMENT OF ERROR

In their petition for further review, the Vanns claim, summarized and restated, that the Court of Appeals erred in its application of the law to the facts of this case.

## ANALYSIS

In this appeal, we are asked to examine whether the Court of Appeals correctly relied upon *Coldwell Banker Town & Country Realty v. Johnson*, 249 Neb. 523, 544 N.W.2d 360 (1996), and

*Byron Reed Co., Inc. v. Majers Market Research Co., Inc.*, 201 Neb. 67, 266 N.W.2d 213 (1978), in affirming the judgment of the district court. Regarding questions of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Martin v. Nebraska Dept. of Corr. Servs., ante* p. 33, 671 N.W.2d 613 (2003).

By its terms, the listing agreement in question expired on May 20, 1997. The relevant portion of the listing agreement provided that a commission would be payable to Trimble if, within 4 months after the expiration of the listing, the Wescoms sold, exchanged, or optioned the property to any party due to Trimble's efforts or advertising during the listing period. This 4-month period ended September 20.

The Vanns argue that since the sale of the property occurred outside both the May listing agreement period and the 4-month extension, the Court of Appeals erred in its application of *Coldwell Banker Town & Country Realty* to the facts of this case. Trimble's amended petition alleged that he was entitled to a commission because the closing of the sale occurred on terms that were substantially similar to those of the May purchase agreement and because he had "found a buyer to purchase said real estate prior to the expiration of the listing agreements."

In determining whether a commission is due to a broker, the court must look to the terms and conditions of the listing agreement. When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. *Gast v. Peters, ante* p. 18, 671 N.W.2d 758 (2003). If a contract is unambiguous, the court will enforce the contract in accordance with the plain meaning of the words of the contract. See *Guerrier v. Mid-Century Ins. Co.*, 266 Neb. 150, 663 N.W.2d 131 (2003). Enforcement of a contract depends upon the terms of the contract and the facts that are applicable to the contract. See *Moller v. State Farm Mut. Auto. Ins. Co.*, 252 Neb. 722, 566 N.W.2d 382 (1997).

In affirming the judgment of the district court, the Court of Appeals relied upon *Coldwell Banker Town & Country Realty*, 249 Neb. at 526-27, 544 N.W.2d at 362, in which we stated:

"[W]here a real estate broker, while his brokerage contract is in full force and effect, obtains a purchaser for real estate and no sale is made during the existence of the agreement but sale is made thereafter by the owner to the person produced by the agent, on substantially the terms that had been offered through the agent's efforts, the broker is entitled to a commission for making the sale." *Byron Reed Co., Inc. v. Majers Market Research Co., Inc.*, 201 Neb. 67, 71-72, 266 N.W.2d 213, 215 (1978). See *Marathon Realty Corp. v. Gavin*, 224 Neb. 458, 398 N.W.2d 689 (1987).

In *Coldwell Banker Town & Country Realty*, our analysis was based upon the fact that a purchaser had been obtained during the listing agreement. Therefore, the issue presented was whether the subsequent sale was upon substantially the same terms as the original offer. We concluded that it was not and that the consummation of the sale was upon different terms and was the result of actions taken by the sellers' attorney and was not due to the efforts of the realty company.

The Court of Appeals also relied on *Byron Reed Co., Inc. v. Majers Market Research Co., Inc.*, 201 Neb. 67, 266 N.W.2d 213 (1978). There, the plaintiff and the defendant entered into a real estate listing agreement which gave the plaintiff the exclusive right to sell the defendant's home until April 1, 1974. The contract further provided that if, within 6 months after expiration of the listing, a sale of the premises was made to any party due to the plaintiff's efforts or advertising, then the commission would likewise be due. The sale occurred after the expiration of the listing agreement but within the 6-month period thereafter. The issue was whether such sale occurred as a result of the efforts or advertising of the plaintiff, and this court found that the sale was due to the plaintiff's efforts.

In the instant case, the listing agreement required Trimble to produce a buyer who was ready, willing, and able to purchase the property during the listing period or sell the property within the 4-month protection period in order to receive a commission. A purchase agreement was signed before the expiration of the listing agreement. However, an addendum to the May purchase agreement conditioned the sale on the Vanns' ability to close on

the purchase of certain real estate for the purpose of effecting a like-kind exchange.

At trial, Trimble testified that Howard Vann had informed him upon their first meeting that he desired to make a purchase of real estate in order to take advantage of the like-kind exchange provision of the Internal Revenue Code. In addition, Trimble testified that because the like-kind exchange could not be completed, the Vanns were not ready, willing, and able to purchase the Wescoms' property at any time during the term of the listing agreement. Trimble's request for a return of the Vanns' earnest money deposit is further proof that he was aware that the Vanns were not ready, willing, and able to purchase the Wescoms' property until a condition precedent was satisfied.

The closing of the sale of the Wescoms' property in accordance with the May purchase agreement was subject to the closing of the sale of certain other property for the purpose of a like-kind exchange. While the Vanns appear to have been willing to buy the Wescoms' property, the failure of a condition precedent to the closing of this sale established that the Vanns were neither ready nor able to complete the sale until the condition was satisfied. As such, Trimble failed to satisfy the provision in the listing agreement that required him to find a ready, willing, and able buyer during the listing period in order to obtain a commission.

The listing agreement also provided that Trimble would receive a commission if a sale occurred during the 4-month protection period. This provision contemplated a situation in which, due to Trimble's efforts, the sale was completed within the 4-month period from the expiration of the listing agreement. Trimble was therefore protected in the event that a sale was consummated within 4 months of the expiration of the listing agreement due to his efforts or advertising during the listing period. However, the sale of the Wescoms' property to the Vanns did not occur during the 4-month period. The sale occurred in October 1997, after the 4-month period had expired.

The Vanns argue that our decision in *The Nebraskans, Inc. v. Homan*, 206 Neb. 749, 294 N.W.2d 879 (1980), is applicable to the case at bar. We agree. *The Nebraskans, Inc.*, involved a listing agreement that provided for a 6-month protection period during which the broker was allowed to receive his commission

if a sale was made due to his efforts. The buyers were unable to secure the necessary financing during the listing agreement period, and their downpayment was returned. Three days after the expiration of the 6-month period, the parties signed a purchase agreement, and the sale eventually closed. We stated that the listing agreement, which expired on February 20, 1978, with a 6-month extension for the benefit of the broker, was clear and unambiguous. We affirmed the summary judgment in favor of the defendants because it was uncontradicted that no sale was consummated through the efforts of the broker during the term of the listing agreement or the 6-month extension period.

*The Nebraskans, Inc.*, controls our decision in this case, and the Court of Appeals erred in relying upon *Coldwell Banker Town & Country Realty v. Johnson*, 249 Neb. 523, 544 N.W.2d 360 (1996), and *Byron Reed Co., Inc. v. Majers Market Research Co., Inc.*, 201 Neb. 67, 266 N.W.2d 213 (1978).

The terms of the listing agreement were clear and unambiguous. Trimble did not obtain a ready, willing, and able buyer during the listing agreement. Thereafter, Trimble was entitled to a commission only if a sale occurred due to his efforts within 4 months of the expiration of the listing agreement. The sale was not consummated during that time.

## CONCLUSION

For the reasons set forth herein, we conclude that the district court erred in failing to sustain the Vanns' motion for a directed verdict made at the close of all the evidence. Therefore, we reverse the decision of the Court of Appeals and remand the cause with directions to reverse the judgment of the district court and remand with directions that the district court dismiss the petition.

REVERSED AND REMANDED WITH DIRECTIONS.

MCCORMACK, J., not participating.